(No. 4619— )

Louis R. Jedlicka and Mildred E. Jedlicka, Claimants, vs. State of Illinois, Respondent.

*Opinion filed November 16, 1960.*
*Petition of Claimants for rehearing denied on January 10, 1961.*

Hoffman and Davis, Attorneys for Claimants.

William L. Guild, Attorney General; Marion G. Tiernan, Assistant Attorney General, for Respondent.

WHAM, J.

Claimants, Louis R. Jedlicka and Mildred N. Jedlicka, bring this action to recover $14,400.00 for loss of rental from their gasoline station property, located in the City of Chicago, by reason of condemnation proceedings instituted by the Department of Public Works and Buildings of the State of Illinois. They claim that these proceedings were pending from March of 1941 until August, 1953, when the case was dismissed by the State, and that by reason thereof claimants were precluded from leasing their property and sustained damages.

The record reflects that on one occasion in February of 1952, claimants obtained a continuance of the condemnation suit over the objection of respondent. On several occasions in 1942 and subsequent to 1948, respondent obtained a continuance of the trial setting. From the middle of 1942 through 1948, little was done by either party on the matter. Negotiations between the parties for the acquisition of the property continued intermittently between 1948 and 1953. At no time during the pendency of the condemnation case did claimant seek to have the case dismissed, nor did they take formal action in Court to press for a trial other than to appear and announce ready at several settings.

Respondent's exhibit No. 3, the Departmental Report, sets forth the reason for the delay and for the dismissal of the action on April 23, 1953, and reads as follows:

"That part of Mannheim Road in Cook County between 119th Street on the north and 143rd Street on the south was designated by the Department of Public Works and Buildings as a part of State Bond Issue Route No. 51 in conformity with the statutes establishing the One Hundred Million Dollar Bond Issue System.

"In the year 1921, the section above referred to was paved with 18 feet of concrete. August 2, 1941, a contract was awarded to widen and resurface the above section. The pavement was completed on August 20, 1942.

"The original construction was confined to the existing right-of-way, which in most instances was four rods or 66 feet in width. Because of the increased

width of pavement, width of shoulders, and improvement of lateral drainage under the 1941 contract, it was considered desirable to acquire additional right-of-way from a number of adjoining properties. Among those properties from which additional right-of-way was to be secured was that of Louis R. Jedlicka, et al. The Jedlicka property is situated at the southwest corner of the intersection of Mannheim Road (S.B.I. Route No. 51) and 131st Street in Palos Township, Cook County.

"An effort was made to acquire 0.538 acres, more or less, from the Jedlicka property through negotiation. That procedure having failed, the Department of Public Works and Buildings instituted eminent domain proceedings against Louis R. Jedlicka, et al, on March 11, 1941.

"The necessary precedent firm offer of settlement was made to the defendants on behalf of the Department of Public Works and Buildings, and was rejected.

"May 6, 1941, the Attorney General served the defendants with notice that the case, No. 41S-3192 in the Superior Court of Cook County would be set for trial on a date soon thereafter. A continuance was granted to the February, 1942 term. The Attorney General sought a hearing on February 18, 1942, but counsel for defendants asked for and was given a continuance. At that time construction operations were being carried on near the Jedlicka property, and it was vitally important that the Department know whether or not the desired tract of land would be acquired in a relatively short time. In addition, the nation was in the throes of serious war effort, and, as a result, steel products were in short supply.

"Rather than risk the possibility of a contractor not being able to secure the necessary amount of reinforcing steel bars, as well as other steel products, the Department authorized the contractor to proceed with construction work along the Jedlicka property frontage. The work was completed and confined to the existing right-of-way. After construction of the section of highway adjacent to the Jedlicka property on Mannheim Road, it was found that the highway was generally adequate for traffic needs without additional right-of-way. In view of these conditions, the Attorney General's office was advised on April 23, 1953, through our district office at Chicago, that case No. 41S-3192 in the Superior Court of Cook County should be dismissed. Accordingly, the case was dismissed on April 28, 1953."

Subsequent to the dismissal, claimant filed, and there is still pending before the Superior Court of Cook County, a petition for damages provided by Section 10, Chapter 47, 1957 Ill. Rev. Stats., which reads as follows:

"In case the petitioner shall dismiss said petition before the entry of such order or shall fail to make payment of full compensation within the time named in such order, that then such court or judge shall, upon application of the defendants to said petition or either of them, make such order in such cause for the payment by the petitioner of all costs, expenses and reasonable attorney fees of such defendant or defendants paid or incurred by such defendant or defendants in defense of said petition, as upon the hearing of

such application shall be right and just, and also for the payment of the taxable costs."

Respondent contends that the relief provided by the above statute is all that claimants are entitled to under the facts of this case.

Claimants on the other hand take the position that, because respondent prolonged the pendency of the proceedings for an unreasonable length of time after it knew the land would not be needed, respondent should respond in damages for the loss of rental incurred by claimants.

Both parties cite the case of *Roach* vs. *Village of Winnetka,* 366 Ill. 578, in support of their respective positions.

The court, in holding in favor of the condemner in that case, stated at page 586:

"All that is alleged, thereafter, to show a wrongful delay is the requests of appellants that the proceedings be completed and applications to the court to set down the disposed of matters for final determination. It is true it is alleged that counsel for the village stated that no one other than appellants wanted these matters finally determined, but the several continuances were granted by the court, and no abuse of discretion is alleged to have been induced by the appellee."

The case of *Winkelman* vs. *City of Chicago,* 213 Ill. 360, relied on by claimants, is not in point, since the corporation counsel at that time had authority to determine when the case would be placed on call for trial. The court, in holding for the plaintiff, stated that, where it is ordinarily the duty of the property owner to take necessary steps to force a case to trial, because the corporation counsel had control of the trial calendar, the duty shifted.

Respondent cites the case of *Howard* vs. *Illinois Central Railroad Company,* 64 F. (2d) 267, involving a condemnation proceeding pending for ten years prior to dismissal. The court denied the property owner's claim for damage, since there was no showing of malicious

or wrongful conduct on the part of the condemner. The fact that many years were involved was insufficient to prove such conduct.

None of the cases called to our attention support claimants' contention. We believe it would be an improper application of the law to allow recovery in a case such as this wherein claimants took no formal action to obtain either a trial or dismissal. To merely announce ready when the case is called and to offer no protest to the granting of a continuance is not sufficient action on claimants' part in seeking an end to the proceedings, and thus free their property from the effects of a pending condemnation action. Moreover, in continuing to negotiate with respondent from 1948 to 1953 on a price for the land, claimants indicated no great desire to terminate the proceedings so that they could rent their premises.

Claimants originally included in their action a claim for loss of merchantability of title during the pendency of the condemnation proceedings. They, however, voluntarily dismissed this portion of their claim during the hearing of the case due to the fact that the property in 1953 was worth more than when the action was instituted in 1941, and, consequently, no loss was involved.

We will not discuss the evidence pertaining to the loss of rental, inasmuch as we are denying this claim; nor, is it necessary to pass on respondent's motion to strike the complaint, which motion was taken with the case.

The claim is hereby denied.

### OPINION ON REHEARING

The following petition for rehearing has been filed by claimants:

"The claimants, Louis R. Jedlicka and Mildred ·E. Jedlicka, respectfully petition for a rehearing of this cause, and in support of such petition show the following:

"In 1942, the Department of Public Works and Buildings of the State of Illinois completed the improvement of a highway adjacent to claimants' property; restricting such improvement to the use of the existing right-of-way, and without availing itself of any of claimants' property described in the pending condemnation suit instituted by the Department for the taking of land for such highway.

"In a report (respondent's exhibit No. 3) made by the Division of Highways, it appears that, after construction of the section of the highway adjacent to the Jedlicka property, it was found that the highway was generally adequate for traffic without the additional right-of-way.' This conclusion was reached in 1942.

· "The report of the Division of Highways then states that 'in view of these conditions (the adequacy of the existing right-of-way) the Attorney General's office was advised on *April 23, 1953* . . . that (this case) . . . should be dismissed. Accordingly, the case was dismissed on *April 28, 1953.*'

Claimants submit that the Court, in its opinion, has overlooked the following matters of vital consideration:

1. The Department knew, in 1942, that it would not require claimants' property; yet kept the condemnation suit pending for 11 years—until April, 1953—before instructing the Attorney General to apply for dismissal of the suit.

2. The Department, notwithstanding it, knew that it did not intend to take the claimants' property in condemnation, thereafter obtained a number of postponements of the trial of the case; and for a five year period between 1948 and 1953 carried on 'negotiations' for 'acquisition' of the property. These negotiations were carried on at a time when the Department well knew that it did not require, and would not take, the property.

3. Why did not the Department instruct the Attorney General, in 1942, to dismiss the condemnation suit? It is apparent that, when the Attorney General was finally instructed, on April 23, 1953, to dismiss the suit, he obtained dismissal in 5 days: on April 28, 1953.

4. Why did the Department 'negotiate' for acquisition of the property, from 1948 to 1953, when it never intended to take the property? The Department *never* informed claimants, *at any time*, of the conclusion it had reached in 1942, not to take claimants' land; yet continued to negotiate for 'acquisition' of the land, from 1948 to 1953!

5. Is it not grossly unfair, perhaps bordering on fraudulent conduct, for a public officer to 'negotiate' for the taking of land subjected to a pending condemnation suit, when there is NO intent ever to take such land, and a conclusion has already been reached, in the public office, not to take the land?

6. May the Department of Public Works and Buildings create the appearance of an intention to take land; lull the property owner into the belief that such land will be taken, and that the condemnation case will proceed to a determination, if negotiations are unsuccessful; all the while knowing that it never intends to take the land? Is this the virtue expected of an agency of the State Government?

7. This Court should protect claimants against the bad faith and wrongful action of a department of the State government. Claimants, ready for trial at all times (except on one occasion in 12 years, when a two week continuance was obtained by claimants, because of illness in the family of counsel for claimants), were sorely disadvantaged, in dealing with a State agency, which acted in bad faith."

In considering this petition, we find that claimants were not misled nor lulled into inaction by any act of respondent's agents.

Claimants' attorney was aware of the negotiations and position of respondent throughout the course of the proceedings, as appears from his testimony at pages 8 and 9 of the abstract of record:

"The Attorney General's office and Department of Public Works took no action in the period between 1942 and 1948 or 1949 to bring the case to trial. From the middle of 1942 until 1945 or 1946, I recollect no correspondence between our office and that of the Attorney General. There were negotiations between our office and the Attorney General. There were negotiations between our office and the Attorney General, some intermittent negotiations, between 1949 and 1953, with regard to possible settlement, but there was such a disparity in figures it appeared at no time we could have reached an agreement. One of the circumstances that seemed to prevent any negotiations was the lack of knowledge on the part of the Attorney General's office as to whether the Department did or did not wish to take the premises in condemnation. The Department at times had intended to take it, and at times had the thought of not taking it."

This does not establish a lulling of claimants into nonaction, but, on the contrary, would seem to prompt the taking of formal action if claimants wished to obtain an early disposal of the matter. No such action was taken by claimants, as we pointed out in our opinion.

Moreover, the statement of claimants in this petition to the effect that ''the Department knew, in 1942, that it would not require claimants' property'' is not well taken. The only evidence on the question is that of claimants' attorney, which we have already set forth above, and respondent's exhibit No. 3, which is the Departmental Report, dated May 25, 1954, a part of which reads as follows:

"Negotiations to acquire .538 acres, more or less, from Jedlicka failed. The Department instituted eminent domain proceedings on March 11, 1941.

"May 6, 1941, the Attorney General served defendants with notice that the case, 41 S 3192, Superior Court of Cook County, would be set for trial, on a date soon thereafter. A continuance was granted to the February, 1942 term. The Attorney General sought a hearing on February 18, 1942, but counsel for defendants asked for and was given a continuance. At that time construction operations were being carried on near the Jedlicka property, and it was vitally important that the Department know whether or not the desired tract of land would be acquired in a relatively short time. In addition, steel was in short supply.

"Rather than risk the possibility of a contractor not being able to secure the necessary amount of reinforcing steel bars, as well as other steel products, the Department authorized the contractor to proceed with the construction work along the Jedlicka property frontage. The work was completed and confined to the existing right-of-way. After construction of the section of highway adjacent to the Jedlicka property on Mannheim Road, it was found that the highway was generally adequate for traffic needs without an additional right-of-way. In view of these conditions, the Attorney General's office was advised on April 23, 1953, through our district office at Chicago, that case 41 S 3192 in the Superior Court of Cook County should be dismissed. Accordingly, the case was dismissed on April 28, 1953.

May 25, 1954 Earl McK. Guy
 Engineer of Claims"

Nothing here establishes the date the Division of Highways came to the conclusion that it no longer wished to acquire the land. We only know from this evidence that it was some time between the completion of the section of highway and April 23, 1953, five days before the dismissal of the action.

We do not feel that the evidence in this case establishes any bad faith or wrongful action on the part of anyone connected with the State of Illinois as contended by claimants. The petition for rehearing is denied.